Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Susan Weiler*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Weiler,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>The Prudential Insurance Company of America; HCA Management Services, LP; HCA Management Services, LP Disability Plan,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Susan Weiler (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, HCA Management Services, LP (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by The Prudential Insurance Company of America (hereinafter referred to as "Prudential"). The specific Prudential long term disability group insurance policy is known as Group Contract No.: G-44028-TN (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees. Upon information and belief, the Prudential Policy may have been included in and part of an employee benefit plan, specifically named the HCA Management Services, LP Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Prudential functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

5. Prudential had an inherent conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with

regard to whether she was disabled, as well as the payor of benefits if it determined Plaintiff was disabled.

6. The Company, Prudential and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Plan and any other Company Plan, as a result of being found disabled in this action.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about March 26, 2012, due to serious medical conditions and was unable to work in her designated occupation as an Emergency Charge RN/Team Leader. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff filed a claim for short-term disability benefits which was approved by Prudential, and those benefits have been paid and exhausted.

11. Following the exhaustion of her short-term disability benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Prudential. Prudential made every decision in Plaintiff's long-term disability claim.

12. Upon information and belief, the relevant Prudential Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

> You are disabled when Prudential determines that:
> - You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
> - You are under the regular care of a doctor; and
> - You have a 20% or more loss in your monthly earnings due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
> - You are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
> - You are under the regular care of a doctor.

13. In support of her claim for long-term disability benefits, Plaintiff submitted to Prudential, medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

14. During the administrative review of Plaintiff's claim, she also applied for, was approved and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

15. Plaintiff informed Prudential that her claim for Social Security disability benefits had been approved and she submitted to Prudential a copy of her August 31, 2012 Notice of Award from the SSA which confirmed the approval.

16. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of March 2012. The

-4-

evidence supporting Plaintiff's claim was so persuasive that SSA found her disabled without her even needing to attend a hearing before an Administrative Law Judge.

17. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Prudential Policy for the first 24 months of disability and substantially similar to the Policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the reasonableness of Prudential's decision to deny Plaintiff's claim and benefits.

18. Prudential initially approved Plaintiff's long-term disability claim and paid her long-term disability benefits through August 26, 2014, when Prudential terminated her benefits without any medical evidence that her condition(s) had improved or that Plaintiff was no longer disabled.

19. In a letter dated May 5, 2014, Prudential informed Plaintiff it was terminating her long-term disability benefits beyond August 26, 2014 after concluding that she was able to return to work. Plaintiff alleges that Prudential's decision abused any discretion that may have been afforded to it in the Policy.

20. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's May 5, 2014 termination of her disability benefits.

21. In support of her appeal and claim for long-term disability benefits, Plaintiff submitted to Prudential additional medical evidence demonstrating that she met any definition of disability set forth in the Policy.

22. As part of its review of Plaintiff's claim for disability benefits, Prudential obtained a medical records only "paper review" of Plaintiff's claim from Robert Cooper, M.D., who is a consulting physician for the University Disability Consortium (hereinafter

"UDC"). As the attached interrogatory answers confirm (*See* Exhibit "A" to this Complaint), Plaintiff alleges that UDC has a long business relationship with the disability insurance industry by providing the type of medical records reviews. Plaintiff alleges UDC derives a significant amount of its annual revenue from its relationship the disability insurance industry, including Prudential. As a result, Plaintiff alleges UDC and/or Dr. Cooper are biased and not independent, objective or impartial, and these biases led to Dr. Cooper's opinion that Plaintiff was not disabled.

23. Prudential also obtained a medical records only "paper review" of Plaintiff's claim from Steven Lobel, M.D.

24. Upon information and belief, Plaintiff alleges Drs. Cooper and Lobel may be long time medical consultants for the disability insurance industry, UDC and/or Prudential. As a result, Plaintiff alleges Drs. Cooper and Lobel may have incentives to protect their own consulting relationships with the industry, UDC and/or Prudential by providing medical records only paper reviews which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and/or Prudential and which supported the denial of Plaintiff's claim.

25. In a letter dated December 5, 2014, Prudential informed Plaintiff it was denying her claim for long-term disability benefits. Plaintiff alleges that in denying Plaintiff's claim, Prudential again abused any discretion that may have been afforded to it in the Policy.

26. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's December 5, 2014 denial of her disability claim.

27. In support of her appeal and claim for long-term disability benefits, Plaintiff submitted to Prudential additional medical, vocational and lay-witness evidence demonstrating that she met any definition of disability set forth in the Policy.

28. Plaintiff submitted to Prudential a June 12, 2015 narrative letter authored by her board certified orthopedic surgeon who has treated her for over twenty (20) years and opined, "In my opinion…[Plaintiff] is unable to work in any occupation."

29. Plaintiff also submitted to Prudential a Functional Capacity Evaluation report dated March 23, 2015, wherein after an extensive several hour evaluation, a qualified physical therapist concluded, "…[Plaintiff] is unable to perform the physical demands of any type of work including SEDENTARY work on a regular and consistent basis." (original emphasis).

30. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated June 27, 2015, who after reviewing Plaintiff's medical evidence as well as the definition of disability and interviewing Plaintiff concluded, "Thus, it is my professional opinion to a reasonable degree of vocational probability that [Plaintiff] meets the any occupation Definition of Disability in the Prudential policy and she is entitled to disability benefits on that policy."

31. Plaintiff also submitted to Prudential the interrogatory answers attached to this Complaint as Exhibit "A," which document UDC has a long business relationship with the disability insurance industry and as referenced *supra,* which indicated that UDC derives a significant amount of its annual revenue from its relationship with the industry and may be biased. Prudential never informed Plaintiff what, if anything, it may have done to investigate Plaintiff's information regarding UDC in order to ensure that she received a full and fair review as required by ERISA.

32. In addition to the medical records and reports submitted to Prudential, Plaintiff submitted three sworn affidavits from herself, her brother and sister, each who confirmed Plaintiff is unable to work in any occupation and that her medical condition had not improved in any manner which would allow her to return to any work since her date of disability.

33. Plaintiff further submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause.

34. Upon information and belief, as part of its review of Plaintiff's claim for long-term disability benefits, Prudential *again* obtained medical records only "paper reviews" of Plaintiff's claim from Robert Cooper, M.D. and Steven Lobel, M.D.

35. Prudential failed to provide a full and fair review pursuant to ERISA and committed a procedural violation by retaining the same reviewing medical professionals, Drs. Cooper and Lobel, to review Plaintiff's claim at two separate levels of review. *See* 29 C.F.R § 2560.503-1(h)(3)(v).

36. As alleged *supra,* Plaintiff believes Drs. Cooper and Lobel are long time medical consultants for the disability insurance industry, UDC and/or Prudential and may have an incentive to protect their own consulting relationships with the disability insurance industry, UDC and/or Prudential by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's long-term disability claim.

37. In letters dated June 1, 2015 and July 27, 2015, in order to engage Prudential in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Prudential and the

opportunity for her and her treating physicians to respond to these reviews prior to Prudential rendering a determination in her claim.

38. Prior to rendering its final denial in Plaintiff's claim, Prudential never shared with Plaintiff the reports authored by Drs. Cooper or Lobel during its final level of administrative review and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the reports and/or perfect her claim. Prudential's failure to provide Plaintiff with the opportunity to respond to the reports is an ERISA procedural violation and precluded a full and fair review. Prudential's action in failing to disclose the reports is also a violation of Ninth Circuit case law.

39. In a letter dated August 13, 2015, Prudential notified Plaintiff it had denied her claim for long-term disability benefits under the Policy. In the letter, Prudential also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA. Plaintiff alleges that Prudential's decision abused any discretion that may have been afforded to it when it denied her claim.

40. Upon information and belief, Prudential's August 13, 2015 denial letter confirms it failed to provide a full and fair review, and in the process, Prudential committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

41. In evaluating Plaintiff's claim on appeal, Prudential had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it

42. Prudential failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Prudential's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

43. Plaintiff alleges Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by retaining the same reviewing physicians to evaluate Plaintiff's claim on two separate levels of review; failing to adequately investigate her claim; failing to credit Plaintiff's reliable evidence; failing to adequately investigate, consider and evaluate the approval of Plaintiff's Social Security disability claim; failing to have her personally examined by a medical professional when the policy allowed for one; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

---

simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

44. Plaintiff alleges the reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Prudential undertook as the decision maker and payor of benefits. Prudential's conflict of interest provided it with a motivation and financial incentive to deny Plaintiff's claim.

45. Plaintiff is entitled to discovery regarding Prudential's aforementioned conflicts of interest and any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced Prudential's decision to deny her claim.

46. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein are so flagrant they justify *de novo* review.

47. As a direct result of Prudential's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled. Upon information and belief, Plaintiff alleges other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

48. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

49. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long-term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Plan and/or Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 17th day of September, 2015.

SCOTT E. DAVIS, P.C.

By: */s/ Scott E. Davis*
    Scott E. Davis
    Attorney for Plaintiff